**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 07-CR-0195-CVE |
| | ) |
| **ROBERT W. SEARLES,** | ) |
| **JOSEPH LYNN THORNBURGH,** | ) |
| **WAYNE LESLIE DAVIDSON, and** | ) |
| **STEVEN FISHMAN,** | ) |
| | ) |
| **Defendants.** | ) |

**OPINION AND ORDER**

Now before the Court are the following motions: Motion of Defendant Steven Fishman to Dismiss the Indictment Due to the Expiration of the Statute of Limitations with Brief (Dkt. # 84); Motion of Defendants to Strike Prejudicial Surplusage from the Indictment with Brief (Dkt. # 85); Joint Motion and Memorandum in Support of All Defendants Requesting Pretrial Hearing to Determine the Admissibility of Co-Conspirator Hearsay (Dkt. # 88); Joint Motion of Defendants to Dismiss Count Two of the Indictment Due to the Expiration of the Statute of Limitations with Brief (Dkt. # 89); Motion of Defendant Steven Fishman to Dismiss Counts One and Two of the Indictment as Duplicitous with Brief (Dkt. # 91); Motion of Defendants Steven Fishman to Dismiss the Indictment as Being Fruit of Effectively Immunized Statements, and Request for a Kastigar-Type Hearing with Brief (Dkt. # 93); Joint Motion of Defendants to Dismiss the Indictment Due to Unreasonable Delay in Seeking Said Indictment with Brief (Dkt. # 96); and Motion of Defendants Searles and Thornburgh to Adopt Motion, Docket Number 91, Inadvertently Filed on Behalf of Defendant Fishman, Only (Dkt. # 97).

**I.**

The government states that this case is the result of a lengthy investigation that started with a complaint to the United States Postal Inspection Service in the Northern District of Oklahoma in early 2003 concerning a fraudulent investment scheme. The alleged victim reported that she had made an investment in a program promoted by Caribou Capital Corporation ("Caribou"). Several federal agencies, including the United States Attorney's Office for the Northern District of Oklahoma, the Internal Revenue Service, Criminal Investigations Division, joined the investigation and allegedly discovered that the core group of participants in the scheme were Robert W. Searles, Joseph Lynn Thornburgh, Wayne Leslie Davidson, and Steven Fishman. Davidson is a citizen of New Zealand and the New Zealand Serious Fraud Office become involved with the investigation. The government states that the investigation required numerous trips to New Zealand, and agents in New Zealand, Australia, Belgium and the United Kingdom have participated in the investigation. Dkt. # 115, at 2-3.

On November 30, 2007, defendants Searles, Thornburgh, Davidson,[1] and Fishman were charged in a sealed indictment (Dkt. # 2) with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 (Count One) and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1856(h) (Count Two). Count One charges the defendants with promoting and selling "historical bonds" issued by the Galveston, Houston & Henderson Railroad ("GH & H Railroad") in the 1850s and the Republic of China in the early 1900s. Defendants allegedly misrepresented the value of the bonds. The government also alleges that defendants misled investors by stating that the

---

[1] Davidson has not been arraigned or made an initial appearance in this Court, and he is not a party to any motions before the Court.

bonds were backed by Amtrak and/or the United States government. Dkt. # 2, at 4. Count Two alleges that defendants used checks and wire transfers to distribute the proceeds of their unlawful activities. The indictment was unsealed on April 1, 2008. Defendants have filed motions to dismiss the indictment or specific counts on numerous grounds. Defendants also request a pretrial hearing concerning the admissibility of co-conspirator statements and ask the Court to strike "suplusage" from the indictment.

## II.

Defendants have filed five motions to dismiss the indictment under Fed. R. Crim. P. 12(b). Defendants jointly argue that the indictment should be dismissed under the statute of limitations, that the government's unreasonable delay inn filing the indictment violated defendants' rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, and that both counts of the indictment are duplicitous.[2] Fishman separately asks the Court to dismiss the indictment under the statute of limitations and he claims that the government used immunized statements to charge him with a crime.

## A.

An indictment may be dismissed under Fed. R. Crim. P. 12(b) if the facts alleged in the indictment fail "to invoke the court's jurisdiction or state an offense." When reviewing a motion under Rule 12(b), a court must make all factual inferences in favor of the government and assume

---

[2] The motion to dismiss each count as duplicitous (Dkt. # 91) was filed on behalf of defendant Fishman only, but defendants Searles and Thornburgh have moved (Dkt. # 97) to adopt the motion and claim that it should have been filed on behalf of all defendants. Searles' and Thornburgh's motion to adopt (Dkt. # 97) this motion to dismiss is granted and the Court will consider the motion to dismiss each count as duplicitous (Dkt. # 91) as if it were filed by all defendants.

that the government could prove all of the facts alleged in the indictment at trial. United States v. Jeronimo-Bautista, 425 F.3d 1266, 1267 (10th Cir. 2005). An indictment is sufficient if it:

> (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense.

United States v. Hall, 20 F.3d 1084 (10th Cir. 1994). The purpose of a motion to dismiss under Rule 12 is not to challenge the strength or weakness of the government's case, but merely to determine whether the indictment states an offense. United States v. Todd, 446 F.3d 1062 (10th Cir. 2006).

**B.**

Fishman alleges that he withdrew from the conspiracy in early 2002, but no later than July 2002, and the indictment was filed more than five years after the last overt act committed while Fishman was a member of the conspiracy. Dkt. # 84, at 2. He states that he provided information to the authorities about Searles and Thornburgh on July 16, 2002, and effectively withdrew from the alleged conspiracy, but the indictment was not filed until November 30, 2007. Fishman argues that the charges against him are barred by the statute of limitations, because the five-year statute of limitations, 18 U.S.C. § 3282, expired on July 16, 2007. The government responds that the specific conspiracy statute used to charge Fishman does not require evidence of an overt act within the limitations period and the indictment alleges that the conspiracy continued into the limitations period. Dkt. # 116, at 2-3. According to the government, the indictment was filed within the statute of limitations.

After a conspiracy is formed, each member of the conspiracy is legally responsible for the acts of other co-conspirators made within the furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640 (1946); United States v. Russell, 963 F.2d 1320, 1322 (10th Cir. 1992). The

statute of limitations against an alleged conspirator begins to run when he withdraws from an ongoing conspiracy. United States v. Grimmett, 236 F.3d 452 (10th Cir. 2001); United States v. Reed, 980 F.2d 1568 (11th Cir. 1993). If a defendant has not taken "affirmative steps" to withdraw from a conspiracy, his co-conspirator's overt acts, as well as his own, may be used to satisfy the statute of limitations. United States v. Thompson, 518 F.3d 832 (10th Cir. 2008); United States v. Hauck, 980 F.2d 611 (10th Cir. 1992). Affirmative steps to withdraw from a conspiracy include "making a clean breast to the authorities or communicating his withdrawal in a manner reasonably calculated to reach co-conspirators." United States v. Parnell, 581 F.2d 1374, 1384 (10th Cir. 1978). Even if a defendant has taken affirmative steps to withdraw from a conspiracy, withdrawal from the conspiracy is a defense to a charge of conspiracy that must be submitted to a jury if there is evidence negating the withdrawal or showing the defendant's continued acquiescence in the conspiracy following withdrawal. United States v. Lash, 937 F.2d 1077, 1084 (6th Cir. 1991).

The indictment alleges that the conspiracy continued into the limitations period and that Fishman was a participant in the conspiracy. Under §§ 1349 (Count One) and 1956(h) (Count Two), it is not necessary for the government to allege that an overt act occurred within the limitations period. Whitfield v. United States, 543 U.S. 209 (2005) (criminal conspiracy statutes modeled on the Sherman Act, 15 U.S.C. § 1, rather than 18 U.S.C. § 371, do not require proof of an overt act to obtain a conviction); United States v. Warshak, 2008 WL 483339, *1 (S.D. Ohio Feb. 19, 2008) (no requirement to prove overt act under § 1349). Even if the indictment does not allege that Fishman committed an overt act within the limitations period, the indictment alleges that the conspiracy continued into the limitations period and that Fishman was a member of the conspiracy. Dkt. # 2, at 3. Fishman's assertion that he withdrew from the conspiracy raises a colorable fact issue that the

5

indictment was filed more than five years after the statute of limitations began to run against Fishman. However, the indictment sufficiently alleges a crime against Fishman and the government has objected to consideration of evidence outside of the indictment. United States v. Hall, 20 F.3d 1084, 1086 (10th Cir. 1994). Fishman may be entitled to an instruction at trial concerning his alleged withdrawal from the conspiracy, but it would inappropriate for the Court to resolve this fact issue on a pretrial motion. Id. at 1088 (a court should limit its review on a motion to dismiss to the allegations of the indictment if the facts are disputed and the government object to resolution of factual issues before trial). Therefore, his motion to dismiss (Dkt. # 84) should be denied.

## C.

Defendants claim that the last overt act alleged in Count Two of the indictment occurred on or about July 1, 2002, but the indictment was not filed until November 30, 2007. Dkt. # 89. According to defendants, the five-year statute of limitations expired in July 2007, and Count Two of the indictment should be dismissed. The government responds that the indictment alleges that the conspiracy continued into the limitations period and Count Two is not barred by the statute of limitations.

Count Two of the Indictment alleges that defendants violated § 1956(h) by knowingly conducting financial transactions involving the proceeds of mail and wire fraud and by knowingly engaging in monetary transactions with criminally derived property with a value in excess of $10,000. Dkt. # 2, at 14. As the Court has previously noted, § 1956(h) does not require the government to prove that an overt act occurred within the limitations period, as long as the government can show that the conspiracy continued into the limitations period. See supra II(B). The Supreme Court has specifically held that § 1956(h) does not require proof an overt act as

element of the offense. Whitfield, 543 U.S. at 214 ("Because the text of § 1956(h) does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction."). The indictment alleges that the conspiracy continued from August 2001 to at least August 2003, and the indictment was filed on November 30, 2007. Dkt. # 2, at 14. Therefore, the indictment alleges that the conspiracy continued into the five-year limitations period and Count Two is not barred by the statute of limitations.

**D.**

Defendants assert that each count of the indictment charges separate and distinct offenses within each count and the indictment should be dismissed as duplicitous. Dkt. # 91. They claim that each count alleges that defendants conspired to violate two separate statutes and the indictment charges multiple offenses within the same count. The government responds that the charged offense is the conspiracy, rather than the objects of the conspiracy, and each count of the indictment properly alleges that defendants entered a single conspiracy to commit multiple crimes.

A charge is duplicitous if it joins two or more offenses in the same count. United States v. Trammell, 133 F.3d 1343, 1354 (10th Cir. 1998). There are three dangers that could result from a duplicitous indictment: "(1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy offense; and (3) A court may have difficulty determining the admissibility of evidence." Id. (quoting United States v. Wiles, 102 F.3d 1043, 1061 (10th Cir. 1996)).

Neither Count One nor Count Two charges multiple offenses within a single count. A single agreement to commit multiple crimes constitutes one conspiracy. United States v. Broce, 488 U.S. 563, 570 (1989). Consequently, an indictment that alleges that the defendants entered one

conspiracy to commit multiple offenses is not duplicitous. Braverman v. United States, 317 U.S. 49, 54 (1942). In this case, Count One of the indictment alleges that defendants conspired to violate 18 U.S.C. §§ 1341 and 1343, and Count Two alleges that defendants conspired to violate 18 U.S.C. §§ 1956 and 1957. However, the indictment clearly alleges that the offenses were the objects of a single conspiracy, and it is the conspiracy, not the objects of the conspiracy, that is the crime charged. See United States v. Daily, 921 F.2d 994, 1001 (10th Cir. 1990). At trial, defendants will be entitled to an instruction concerning the jury's duty to reach a unanimous finding as to the facts underlying and the objects of each conspiracy. However, the indictment does not charge a duplicitous offense in either Count One or Two, and defendants' motion to dismiss (Dkt. # 91) should be denied.

**E.**

Fishman claims that he voluntarily cooperated with the government's investigation with the understanding that his statements would not be used against him. Dkt. # 93. He asserts that the indictment is the fruit of "effectively immunized" statements and should be dismissed. Fishman acknowledges that he did not receive a formal grant of immunity from the government before he decided to cooperate, but he claims that government agents led him to believe that he was simply a fact witness, rather than a target of the investigation. The government responds that Fishman never received immunity of any kind -- and in fact received a "target" subpoena -- and his alleged belief that he would not be prosecuted based on his cooperation with government agents was unreasonable. Dkt. # 120, at 3.

In Kastigar v. United States, 406 U.S. 441 (1972), the Supreme Court provided a framework for analyzing claims that a prosecutor improperly used immunized testimony as a basis to initiate criminal charges. A grand jury witness may be compelled to give incriminating testimony before a grand jury if the federal prosecutor agrees to provide the witness use immunity. Id. at 453-54. Use immunity is sufficient to protect a witness' Fifth Amendment right to be free from self-incrimination as long as a prosecutor is barred from directly or indirectly using the testimony to file criminal charges against the witness. The Supreme Court considered the constitutionality of the federal immunity statutes, 18 U.S.C. §§ 6001-6005, and found that § 6002's total bar on the use of immunized testimony, including any use as an "investigative tool," satisfies the Fifth Amendment. If a witness is prosecuted after providing immunized testimony and the witness challenges the validity of his prosecution, the government bears the burden to show that it relied on evidence "derived from a legitimate source wholly independent of the compelled testimony" as a factual basis for the charges Id. at 460. However, use immunity "grants neither pardon nor amnesty" and, if the government satisfies it burden to prove it relied on evidence independent of the immunized testimony to initiate the prosecution, the indictment should not be dismissed. Id. at 461.

The Tenth Circuit strongly encourages district courts to hold a preitrial hearing to determine if a prosecution is tainted by the use of immunized evidence. Grand Jury Subpoenas Dated Dec. 7 and 8, Issued to Bob Stover, Chief of Albuquerque Police Dep't v. United States, 40 F.3d 1096, 1101 n.4 (10th Cir. 1994). Subsequent cases have suggested that Kastigar's holding has been limited to prevent only the use of testimony obtained through governmental compulsion. See Chavez v. Martinez, 538 U.S. 760, 767 (2003); United States v. Hubbell, 530 U.S. 27, 39 (2000).

The cases cited by defendant support this limited interpretation of Kastigar. United States v. North, 920 F.2d 940 (D.C. Cir. 1990); United States v. McDaniel, 482 F.2d 305 (8th Cir. 1973).

Out of an abundance of caution, the Court will set this motion for an evidentiary hearing. Based on the record currently before the Court, it does not appear that Fishman entered an express or written agreement with investigators for immunity and he must offer some evidence supporting his assertion that his statements were "effectively immunized." Dkt. # 93, at 2. The mere fact of Fishman's cooperation does not establish that he made any statements to a governmental agent pursuant to an immunity agreement. In the first part of the hearing, Fishman must show that he cooperated with authorities based on an express or implied grant of immunity. Before the burden shifts to the government, Fishman must make a prima facie showing that he actually cooperated with the government with the understanding that his statements would not be used against him. See United States v. Lacey, 86 F.3d 956, 972 (10th Cir. 1996) ("Thus, once a defendant shows that he or she has been compelled to testify under a grant of use immunity about a matter relevant to his or her prosecution, the burden then shifts to the government . . . ."). If defendant makes such a showing, the burden will shift to the government to prove that it did not rely on immunized testimony to charge Fishman with a crime. The Court will issue a final ruling on this motion (Dkt. # 93) following an evidentiary hearing.

**F.**

Defendants jointly allege that the government unreasonably delayed the filing of the indictment and this pre-filing delay has prejudiced defendants when preparing a defense. Defendants claim that the government began its investigation in March 2003 but did not file charges

until November 2007. Defendants cite three "events" which allegedly show that any pre-filing delay prejudiced them:

1. The death of Sonny Beckham on or about August 4, 2008. Mr. Beckham could have testified that Mr. Fishman warned him against making any further investments into the bond program, during a relevant time period alleged in the indictment.

2. The deteriorating health and advanced age of John Clancy, the bond valuator. About one year ago, Mr. Clancy was in good health and had clear mental recall. He could have testified about his valuation of the bonds.

3. The undeniable fact that as time goes by, memories of witnesses begin to fade, evidence is lost or destroyed, and witnesses move, making it difficult to find them.

Dkt. # 96, at 2. The government denies that it unreasonably delayed when filing charges in this case and asserts that defendants have not shown "substantial" prejudice from any pre-indictment delay. Dkt. # 115, at 6.

The Supreme Court has recognized that pre-indictment delay may rise to the level of a due process violation. United States v. Lovasco, 431 U.S. 783 (1977); United States v. Marion, 404 U.S. 307 (1971). However, a court may not dismiss an indictment simply because it disagrees with the government's reason for delaying the filing of formal charges. Lovasco, 431 U.S. at 790 ("the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment."). To prove a due process violation based on alleged delay in bringing an indictment, a defendant must establish that "the government intentionally delayed for tactical reasons and the delay caused him actual prejudice." United States v. Wood, 207 F.3d 1222, 1234 (10th Cir. 2000). "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice." Id. at 1235 (quoting Trammell, 133 F.3d at 1351).

11

Defendants claim that they have shown actual prejudice caused by pre-indictment delay and suggest that the government has the burden to explain its "foot-dragging." Dkt. # 96, at 3. However, defendants have not shown any actual prejudice caused by pre-indictment delay and their argument concerning burden-shifting is wholly unsupported by citation to any legal authority.[3] Defendants vague allegations concerning witnesses' potential loss of recollection and lost evidence are not sufficient to support a motion to dismiss the indictment for pre-indictment delay. See Wood, 207 F.3d at 1235. Defendants' two remaining allegations suggest that one witness died and another has lost his recollection of the events. Dkt. # 96, at 3. Without additional context for these allegations, it is not possible for the Court to determine if the testimony of these two witnesses would be relevant. Even if the Court were to find that defendants had suffered some prejudice, defendants make no attempt to show that the government intentionally delayed bringing the indictment to gain a tactical advantage at trial and defendants' allegations do not permit such an inference. Therefore, defendants have not shown that due process violation occurred and their motion to dismiss due to pre-indictment delay (Dkt. # 96) should be denied.

### III.

Defendants have raised two procedural issues in pretrial motions. First, defendants ask the Court to strike surplusage from the indictment. Second, defendants ask the Court to hold a pretrial hearing to determine the admissibility of co-conspirator statements. The government objects to both of defendants' motions.

---

[3] Defendants cite United States v. Crouch, 51 F.3d. 480 (5th Cir. 1995), as an example of a case where an indictment was dismissed due to pre-indictment delay. However, the full Fifth Circuit agreed to hear the case en banc and reversed the district court's decision to dismiss the indictment. United States v. Crouch, 84 F.3d 1497 (5th Cir. 1996). Consequently, the decision cited by defendants has no precedential value.

**A.**

Defendants Fishman and Thornburgh assert that the indictment alleges that these defendants were previously convicted of a "federal felony offense." Dkt. # 85. They claim that these allegations are not relevant to the charged offenses and prejudice defendants by referring to evidence of other crimes that is inadmissible under Fed. R. Evid. 404(b). The government responds that the challenged allegations are material to the charged offense and should not be stricken. Dkt. # 117.

Federal Rule of Criminal Procedure 7(d) authorizes a district court to "strike surplusage from the indictment or information." A district court has the discretion to strike "surplusage allegations not relevant to the charge at issue and inflammatory and prejudicial to the defendant." United States v. Collins, 920 F.2d 619, 631 (10th Cir. 1990). To strike allegations from an indictment, the allegations must be "both independent of and unnecessary to the offense on which a conviction ultimately rests." United States v. Brooks, 438 F.2d 1231, 1237 (10th Cir. 2006). If the challenged language is information that the government intends prove as part of its case-in-chief, the language should not be considered surplusage regardless of the prejudicial impact of the evidence. United States v. Thomas, 875 F.2d 559, 562 n.2 (6th Cir. 1989). Court rarely strike allegations from an indictment, because jury instructions are ordinarily sufficient to prevent a defendant from suffering any prejudice due to allegations in an indictment. United States v. Daniels, 159 F. Supp. 2d 1285, 1300 (D. Kan. 2001).

The Court declines to strike the challenged allegations of the indictment. The government has indicated that it intends to rely on Fishman's and Thornburgh's felony convictions as evidence of defendants' fraudulent conduct. Dkt. # 117, at 3. According to the government, an investor could have found Fishman's and Thornburgh's prior convictions to be relevant information before he or

13

she made a decision to invest with defendants. The government is advised that it must use this evidence to prove an element of the offense and the Court may exclude this evidence if it becomes clear that these allegations are an attempt to circumvent Fed. R. Evid. 404(b). However, it would be premature to strike allegations from the indictment and defendants' motion (Dkt. # 85) to strike surplusage from the indictment is denied.

**B.**

Defendants request a pretrial hearing before any alleged co-conspirator statements may be used against them at trial. Dkt. # 88. The government acknowledges that it may attempt to introduce co-conspirator statements at trial, but asserts that a pretrial hearing on the admissibility of these statements is unnecessary. Dkt. # 121.

Under Rule 801(d)(2)(E), a statement is not considered hearsay if the court finds that "(1) a conspiracy existed; (2) both the declarant and the defendant against whom the declaration is offered were members of the conspiracy; and (3) the statement was made in the course of and in furtherance of the conspiracy." United States v. Eads, 191 F.3d 1206 (10th Cir. 1999) (quoting United States v. Caro, 965 F.2d 1548, 1557 (10th Cir. 1992)). For Rule 801(d)(2)(E) to apply, the government must establish the existence of a conspiracy at some point in its case-in-chief, or the statements must be excluded. United States v. Katz, 705 F.2d 1237 (10th Cir. 1983). The Court "can only admit coconspirator statements if it holds a *James* hearing [before trial] or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'" United States v. Townley, 472 F.3d 1267 (10th Cir. 2007) (quoting United States v. Owens, 70 F.3d 1118 (10th Cir. 1995)). A district court may rely on the statements and observations of other co-conspirators to support its finding that a conspiracy existed. Owens, 70

F.3d at 1124-25.  If a co-conspirator statement is admissible under Fed. R. Evid. 801(d)(2)(E), the requirements of the Confrontation Clause of the Sixth Amendment are also satisfied.  United States v. Molina, 75 F.3d 600, 603 (10th Cir. 1996).

This Court does not routinely hold a pretrial hearing to determine the admissibility of co-conspirator statements and finds that such a hearing is not necessary in this case.  Instead, the Court will follow its standard practice and consider the admissibility of co-conspirator statements at trial.  However, this Court does not preliminarily admit co-coconspirator statements.  Before attempting to offer any co-conspirator statements at trial, the government must produce sufficient evidence for the Court to find by a preponderance of the evidence that a conspiracy existed.  Before the government attempts to offer a co-conspirator's statement at trial, it must request a hearing outside of the presence of the jury and the Court will make specific findings as to whether the government has established the existence of a conspiracy by a preponderance of the evidence.  This will protect defendants from any risk that the jury will hear co-conspirator statements before the Court has determined that a conspiracy existed.  However, defendants' request for a pretrial hearing concerning the admissibility of co-conspirator statements is denied.

**IT IS THEREFORE ORDERED** that: the Motion of Defendant Steven Fishman to Dismiss the Indictment Due to the Expiration of the Statute of Limitations with Brief (Dkt. # 84) is **denied**; the Motion of Defendants to Strike Prejudicial Surplusage from the Indictment with Brief (Dkt. # 85) is **denied**; the Joint Motion and Memorandum in Support of All Defendants Requesting Pretrial Hearing to Determine the Admissibility of Co-Conspirator Hearsay (Dkt. # 88) is **denied**; the Joint Motion of Defendants to Dismiss Count Two of the Indictment Due to the Expiration of the Statute of Limitations with Brief (Dkt. # 89) is **denied**; the Motion of Defendant Steven Fishman to Dismiss

Counts One and Two of the Indictment as Duplicitous with Brief (Dkt. # 91) is **denied**; the Joint Motion of Defendants to Dismiss the Indictment Due to Unreasonable Delay in Seeking Said Indictment with Brief (Dkt. # 96) is **denied**; and the Motion of Defendants Searles and Thornburgh to Adopt Motion, Docket Number 91, Inadvertently Filed on Behalf of Defendant Fishman, Only (Dkt. # 97) is **granted**.

**IT IS FURTHER ORDERED** that the Motion of Defendant Steven Fishman to Dismiss the Indictment as Being Fruit of Effectively Immunized Statements, and Request for a Kastigar-Type Hearing with Brief (Dkt. # 93) is taken under advisement and set for evidentiary hearing on **March 2, 2009, at 10:30 a.m**.

**DATED** this 6th day of February, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT